## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JENNY CHEN AND BRIAN JORDAN, on
behalf of themselves and all others similarly
situated,

        Plaintiffs,

              v.

AMTRAK and RWC, INC.,

        Defendants.

No. _____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs Jenny Chen and Brian Jordan ("Plaintiffs"), individually and on behalf of all others similarly situated ("Class members"), bring this Class Action Complaint against Defendants Amtrak and RWC, Inc. (collectively "Defendants"), and allege as follows.

### Nature of Action

1.    This is a class action brought on behalf of individuals whose residential properties are located near Amtrak rail lines in Philadelphia and who have suffered property damage as a result of Defendants' use of herbicide to clear vegetation along these lines.

2.    Defendant Amtrak operates a number of rail service routes that run through Philadelphia and offers passenger rail service from 30th Street Station, among other stations in Philadelphia. Amtrak's rail lines run throughout the city and county of Philadelphia.

3.    Amtrak and its agent, Defendant RWC, Inc. ("RWC"), spray herbicide to kill vegetation lying along Amtrak rail lines.

4.    Unfortunately for Philadelphia residents, Amtrak and RWC do not exercise due care in the manner in which they spray herbicide.

5.      Further, Amtrak and RWC use the herbicide, AquaNeat, sold by Nufarm, Inc. ("Nufarm").  The primary ingredient in AquaNeat is glyphosate which is better known by one of its trade names, "Roundup."

6.      Glyphosate is a systemic herbicide and plant desiccant.  In 2015, the International Agency for Research on Cancer, a unit of the World Health Organization, issued a statement that glyphosate is a probable human carcinogen.

7.      As a result of Amtrak and RWC's use of glyphosate-based herbicide and the manner in which they spray this herbicide, residential properties near Amtrak rail lines in Philadelphia have suffered damage to their vegetation and the deposition of glyphosate in their soils.

8.      Indeed, Plaintiffs' extensive garden was killed by Amtrak and RWC's spraying of glyphosate-based herbicide, and the soil in Plaintiffs' yard was contaminated with glyphosate.

9.      As a result of the foregoing wrongful conduct, Plaintiffs bring this class action seeking actual damages, attorneys' fees, and costs for a class of similarly-situated persons who, like them, have been subjected to Defendants' illegal practices, which constitute nuisance, trespass, and negligence under Pennsylvania law.

## Jurisdiction and Venue

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because there are more than 100 proposed Class Members, members of the proposed class and the Defendants are citizens of different states, and the amount in controversy exceeds $5 million.

11.    This Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged in this Complaint took place in the Commonwealth of Pennsylvania, Defendants are authorized to do business in Pennsylvania and have both administrative and retail locations in Pennsylvania, Defendants have sufficient minimum contacts with Pennsylvania, and/or Defendants intentionally avail themselves of markets in Pennsylvania through the promotion, marketing and sale of their products to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the named Plaintiffs reside here, because Defendants have thousands of customers in this District, because Defendants receive substantial revenue from customers in this District, because Defendants maintain administrative and retail locations in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## Parties

13.    Plaintiffs Jenny Chen and Brian Jordan reside on Mantua Avenue in Philadelphia, Pennsylvania.

14.    Defendant Amtrak, also known as the National Passenger Rail Corporation, is a Washington, D.C. corporation, headquartered in Washington, DC.

15.    RWC, Inc., is a Massachusetts Corporation, headquartered in Westfield, Massachusetts.

## Factual Allegations

### A.    Plaintiffs' Home and Their Garden

16.    Plaintiffs live in a home located on Mantua Avenue in Philadelphia.

17.    Plaintiffs' Mantua Avenue property has both front and back yards.

18.    Plaintiffs' back yard faces several rail lines, including at least one used by Amtrak

for its passenger rail service.

19.    Plaintiffs are avid gardeners and had cultivated an extensive garden in their back

yard.  The garden included the following herbs, fruits, and vegetables:

      a.  cherry tomatoes
      b.  heirloom tomatoes
      c.  eggplant
      d.  sweet peppers
      e.  chili pepper plants
      f.  zucchini
      g.  okra
      h.  perennial "walking onion" plants
      i.  rosemary
      j.  sage
      k.  chives
      l.  cucumber plants
      m.  green bean plants
      n.   basil plants
      o.  Swiss chard plants
      p.  kale plants
      q.  celery plants
      r.  wild wood sorrel a.k.a. "lemon clover"
      s.  dandelion greens
      t.  lambs quarter
      u.  purple amaranth
      v.  raspberry sorrel
      w.  escarole
      x.  strawberry plants
      y.  dill plant
      z.  arugula plants
      aa. lemongrass
      bb. parsley
      cc. clover (to bring nitrogen to the soil)

20.    Plaintiffs' garden also included the following types of flowers:

      a.  calendula
      b.  borage
      c.  bachelors buttons
      d.  marigold
      e.  zinnia
      f.  carrot flower

g.  approximately 150 tulip bulbs
h.  hyacinth bulbs
i.  daffodil bulbs
j.  violets

21.    Plaintiffs used strictly organic practices in planting and maintaining their garden, including transporting approximately two tons of compost from the Fairmount Park Recycling Center.

22.    Plaintiffs never used AquaNeat or any other herbicide containing glyphosate in their garden.

23.    Plaintiffs regularly ate items from their garden, including using them in salads, drinks, and other dishes.

24.    Further, Plaintiffs had grown a flower arrangement in their back yard.  The arrangement consisted of more than a hundred tulips forming the shape of two hearts, the Plaintiffs' initials ("J + B"), and two question marks.  This arrangement had significant sentimental value to Plaintiffs, because Mr. Jordan proposed to Ms. Chen in front of this arrangement.

25.    In sum, Plaintiffs invested significant time and expense to build and nurture a garden which had great practical, aesthetic, and emotional value to them.

26.    This is a photograph of Plaintiffs' garden, before it was killed by Amtrak and RWC's herbicide spraying:



27.     As described below, however, Plaintiffs' garden was destroyed by Defendants Amtrak and RWC through their careless application of Nufarm's herbicide, AquaNeat.

**B.     The Death of the Garden**

28.     On or about August 16, 2017, Defendant RWC, at Amtrak's direction, sprayed AquaNeat on or near Plaintiffs' back yard as part of what was presumably an operation to remove vegetation from the rail lines running behind Plaintiffs' home.

29.     The AquaNeat sprayed by RWC entered into Plaintiffs' back yard and, ultimately killed the vegetation contained in Plaintiffs' garden, which was described in the preceding section.  Plaintiffs were initially unaware that this spraying had taken place.

30.     Consistent with the operation of AquaNeat, the die-off of Plaintiffs' garden was not immediate.  It took several days before Plaintiffs noticed that their garden was dying and it was roughly one week before the garden was largely dead.  At this point, almost all vegetation in Plaintiffs' back yard which was within about 15 feet of the yard's rear boundary had died.

31.     Because it took several days for the first effects of the AquaNeat spraying to be seen, Plaintiffs continued to eat items from their garden immediately following the AquaNeat spraying and, in fact, shared garden items with several friends.

32.     Once it became apparent to Plaintiffs that their garden was dying, Plaintiffs stopped eating from the garden and contacted the Pennsylvania Department of Agriculture in the hope of determining what happened.

33.     These are several photographs of Plaintiffs' garden, after it was killed by Amtrak and RWC's herbicide spraying:







**C.    The Pennsylvania Department of Agriculture's Investigation**

34.    On or about August 23, 2017, the Pennsylvania Department of Agriculture sent an inspector ("Inspector") to Plaintiffs' property.

35.    The Inspector gathered sample plant material and topsoil from Plaintiffs' property for testing.  The Inspector's report on his visit to Plaintiffs' property is attached hereto as Exhibit A.

36.    On or about, August 31, 2017, the Inspector communicated to Plaintiffs that he had contacted Amtrak and RWC and that RWC confirmed that as many as four herbicides may have been sprayed on or near Plaintiffs' property.  Among these herbicides was AquaNeat.

37.    On or about November 28, 2017, the Pennsylvania Department of Agriculture issued its report on the samples taken from Plaintiffs' property on August 23, 2017.  The report confirmed the presence of glyphosate in the sample materials taken from Plaintiffs' property.  A copy of the November 28, 2017 report is attached hereto as Exhibit B.

**D.    The Dangers of Glyphosate**

38.    Glyphosate, commonly known by its most famous trade name "Roundup" is a widely used herbicide and plant desiccant.

39.    It kills almost all annual and perennial plants.

40.    In 2015, the International Agency for Research on Cancer, a unit of the World Health Organization, issued a statement that glyphosate is a probable carcinogen.

41.    There is no scientific debate that glyphosate is intended to and does kill a wide range of vegetation.

<u>**Class Action Allegations**</u>

42.    Plaintiffs bring this action, pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, on behalf of themselves and the following class ("Class"):

> All owners and lessees of residential properties located within 100 meters of an Amtrak rail line in Philadelphia County, Pennsylvania.

43.    Defendants' practices exposed all Class members' properties to the glyphosate-based herbicide, AquaNeat.

44.    Plaintiffs are currently unaware of the identities of all Class members.  However, upon information and belief, there are thousands of residential properties that lie within 100 meters of Amtrak rail lines in Philadelphia and, therefore, there are thousands of Class members. For this reason, the Class is so numerous that joinder of all Class members would be impracticable and a class action would be the most efficient mechanism for resolution of the claims of the Class.

45.    There exist numerous questions of law or fact that are common to all Class members and predominate over any questions solely affecting individual Class members.  The questions of law or fact common to Plaintiffs and the Class include, but are not limited to:

    a.  whether Class members' properties were exposed to herbicide by Defendants' practices;

    b.  whether Defendants' conduct constitutes a nuisance;

    c.  whether Defendants' conduct constitutes trespass;

    d.   whether Defendants' conduct constitutes negligence; and

    e.  the nature and extent of classwide injury and the measure of damages for the injury.

46.    Plaintiffs' claims are typical of the claims of the Class because their property was exposed to herbicide by Defendants' practices and Plaintiffs suffered property damage as a result.

47.    Plaintiffs are represented by counsel experienced in class action litigation and in litigating environmental claims.  Plaintiffs will fairly and adequately protect the interests of the Class and have no conflicts with the interests of the Class.

48.    The prosecution of separate actions against Defendants would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for Defendants.  In addition, adjudications with respect to individual members of the Class could as a practical matter be dispositive of the interests of all the other members of the Class not parties to such adjudications, or could substantially impede or impair their ability to protect their interests.

49.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

50.    Without a class action, Defendants will likely retain the benefit of their wrongdoing and will continue in the unlawful course of action described herein, which will result in further damages to Plaintiffs and the Class.

51.    The members of the Class are known to Defendants and are readily identifiable through Defendants' records or, alternatively, can be established through property records and available mapping technologies.

**Claims for Relief**

**Count I**

**NUISANCE**
**(On Behalf of Plaintiffs and the Class)**

52.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

53.     Defendants, by their spraying along Amtrak rail lines, have caused glyphosate to enter onto and remain on Plaintiffs' and Class members' properties, causing damage to plant life on these properties.

54.     Defendants' conduct was intentional and unreasonable and has interfered with Plaintiffs' and Class members' private use and enjoyment of their properties.

55.     Plaintiffs and Class members have been damaged as a result of Defendants' conduct by having glyphosate enter onto and remain on their land, as well as by having vegetation on their properties killed by glyphosate.

**Count II**

**TRESPASS**
**(On Behalf of Plaintiffs and the Class)**

56.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

57.     Defendants, by their spraying along Amtrak rail lines, have caused glyphosate to enter onto and remain on Plaintiffs' and Class members' properties, causing damage to plant life on these properties.

58.     Defendants' conduct constituted an unprivileged and intentional entry onto Plaintiffs' and Class members' properties.

14

59.    Plaintiffs and Class members have been damaged as a result of Defendants' conduct by having glyphosate enter onto and remain on their land, as well as by having vegetation on their properties killed by glyphosate.

**Count III**

**NEGLIGENCE**
**(On Behalf of Plaintiffs and the Class)**

60.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

61.    Among other prohibitions, AquaNeat's label (attached hereto as Exhibit C) specifies:

- that the product should not be applied "in a way that will contact workers or other persons, either directly or through drift."  Ex. C, p. 2.

- "Keep people and pets off treated areas until spray solution has dried to prevent transfer of this product onto desirable vegetation."  *Id.* at p. 3 (Non-Agricultural Use Requirements).

- "Avoiding spray drift at the application site is the responsibility of the applicator."  *Id.* at p. 7 (Spray Drift Management)

- "EXTREME CARE MUST BE EXERCISED TO AVOID CONTACT OR SPRAY WITH FOLIAGE, GREEN STEMS, EXPOSED NON-WOODY ROOTS OR FRUITS OF CROPS, DESIRABLE TURFGRASSES, TREES, SHRUBS OR OTHER DESIRABLE VEGATATION SINCE SEVERE DAMAGE OR DESTRUCTION MAY RESULT."  *Id.* at p. 14 (Non-Crop Uses).

62.    The Pennsylvania Pesticide Control Act of 1973, 3 P.S. §111.21, *et seq.*, specifies:

15

(e)  No person shall use, or cause to be used, any pesticide inconsistent with its labeling or to the regulations of the secretary if such differ from, or further restrict, the labeling of the pesticide.

(j)  No person shall operate pesticide application equipment or devices in a faulty, careless or negligent manner.

3 P.S. §111.28.

63.    Amtrak and its contractor, RWC, violated each of AquaNeat's label prescriptions set forth above, among others, and thus did not exercise due care, consistent with AquaNeat's labeling or Pennsylvania law, in conducting their spraying of AquaNeat along Amtrak rail lines. If they had exercised due care, then AquaNeat would not have entered onto Plaintiffs' and Class members' properties and damaged plant life on these properties.

64.    Defendants' spraying of AquaNeat damaged plant life on Plaintiffs' and Class members' properties and caused AquaNeat to remain in the soil of these properties.

65.    Plaintiffs and Class members have been damaged as a result of Defendants' conduct by having glyphosate enter onto and remain on their land, as well as by having vegetation on their properties killed by glyphosate.

## **Prayer for Relief**

WHEREFORE, Plaintiffs respectfully pray that relief be granted as set forth above and also as follows:

(A)    For an order certifying this action as a class action, appointing Plaintiffs and their undersigned counsel to represent the Class;

(B)    For an order declaring that the practices complained of herein are unlawful under Pennsylvania law and should be halted or modified immediately;

(C)    Award Plaintiffs and the Class damages to be paid by Defendants, together with such prejudgment interest as may be allowed by law;

(D)    Award Plaintiffs and the Class their costs and disbursements in this suit, including, without limitation, reasonable attorneys' fees and any reasonable accountants' or experts' fees;

(E)    Enter a permanent injunction ordering Defendants henceforth to refrain from engaging in the unlawful conduct described in this Complaint and to take all necessary measures to ensure that it is at all times in compliance with such injunction; and

(F)    Grant Plaintiffs and the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury for all issues so triable.

Dated:  August 23, 2018                    Respectfully submitted,

Noah Axler (Pa Bar #85324)
Marc Goldich
**AXLER GOLDICH LLC**
1520 Locust Street, Suite 301
Philadelphia, PA 19102
Tel: (267) 534-7400
Fax: (267) 534-7407
naxler@axgolaw.com
mgoldich@axgolaw.com

Gerald J. Williams
**WILLIAMS CEDAR LLC**
1515 Market Street, Suite 1300
Philadelphia, PA 19102
Tel: (215) 557-0099
Fax: (215) 557-0673
gwilliams@williamscedar.com

17

Joshua H. Grabar
**GRABAR LAW OFFICE**
1735 Market Street
Suite 3750
Philadelphia, PA 19103
Tel:   (267) 507-6085
Fax:  (267) 507-6048
jgrabar@grabarlaw.com

*Attorneys for Plaintiffs*